**PFOST, Estate of, In re.**
**KREGLOW, Plaintiff-Appellant, v. RUSSELL, Admr.,**
**Defendant-Appellee.**

Ohio Appeals, Second District, Shelby County.

No. 128.   Decided February 8, 1944.

H. H. Needles, Sidney, for claimant.
H. K. Forsyth, Sidney, for Exceptor.

## OPINION

By BARNES, P. J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff, Estella Kreglow's appeal on questions of law from the judgment of the Probate Court of Shelby County, Ohio.

The action arose in the Probate Court through exceptions to Schedule of Debts filed by J. E. Russell, administrator of the estate of Rosanna Pfost. Rosanna Pfost died in 1942 in Sidney, Ohio, and at the time of her death was 86 years of age. Prior to her death, her sister, Laura M. Frey, of Dayton, Ohio, was the duly appointed and acting guardian of Miss Pfost. The appointment was made on the ground that the ward was an incompetent person and the original appointment was made in 1917, continuing until the time of her death. At or about the time of the appointment in 1917, Miss Pfost was committed to the asylum at Dayton, Ohio. After a period of years the authorities at Dayton ordered that Miss Pfost be returned to her home, not on the ground that she had been cured of her mental infirmity, but on the theory that she was not considered dangerous and could be safely kept by the family.

Following her removal from the institution, she was taken to the home of her brother in Michigan and after a period of time, Miss Pfost insisted on returning to her home in Sidney. Her home consisted of the west half of a small residence property located on North Street, just a short distance from the public square. This property in its entirety was originally owned by the mother. By will, she gave the west half of the house to Miss Pfost and the east half to Mrs. Laura Frey. Miss Pfost was never married, her closests relatives being her brothers and sisters. The mother's bequest occurred prior to 1917.

There was a partition between the east half and the west half with one or two connecting doors. The two parts of the property could be kept separated by a locking of the doors.

Originally it was constructed as one residence property and occupied almost the entire lot. The lot was approximately 40 x70. Mrs. Frey rented her east half until 1931, the rental being $12.00 or $13.00 per month.

Miss Pfost's insanity was originally a very mild form. She was able to take care of herself, buying her own provisions, cooking her own meals, doing her washing and ironing and taking care of her house. Mrs. Frey would come to Sidney a couple of times a month, at which time she would pay all bills and leave with Miss Pfost a small amount for her daily expenses. Miss Pfost's mental ailment took on the form of an obsession. In a general way it was described as thinking people were doing her harm—if any of the furniture was broken, she thought someone had come in her house and broken it or if a hole was worn in her clothing, she thought someone had cut the hole in it. On or about 1931 she developed a grudge against any and all of the tenants living in Mrs. Frey's part of the house. The last tenant was a Mr. Allen. They had a small child. She threatened to kill the child if it came over on her side of the lot and in talking to the child's mother, pointed to an axe which was beside the door. Knowing Miss Pfost's mental infirmity, the Allens became frightened and moved from the premises. Thereafter, Mrs. Frey did not make any further effort to rent the premises, thinking from her past experience that it would be useless. There is evidence that, from this time on, Miss Pfost occupied Mrs. Frey's part of the house in a very limited way. A few articles belonging to Miss Pfost were kept in Mrs. Frey's portion of the house. It was not thought advisable to make an attempt to remove Miss Pfost to any other location since she was determined to stay in her own home. It is inferable that this was a wise move as otherwise her mental impairment might have been intensified.

Following the death of Miss Pfost, Mrs. Frey filed her final account as guardian and J. E. Russell was appointed administrator of the Rosanna Pfost estate.

Mrs. Frey presented to the administrator a claim totalling $1300.00 based on rental charge of $10.00 per month from October 1st, 1931 to July 28, 1942.

The administrator allowed the claim and listed it in the schedule of debts as being allowed. As heretofore stated, Mrs. Estella Kreglow filed exceptions.

Mrs. Kreglow was the niece and thereby had an inheritable interest in the estate of Miss Rosanna Pfost. Upon hearing before the Probate Court, the exceptions were overruled.

Motion for new trial was filed and overruled and final judgment entered. Within due time notice of appeal was filed, thus lodging the case in our court. Appellant's assignments of

errors are set out in four separately stated and numbered specifications as follows:

1. The decision is contrary to law.

2. That decision was adverse to said exceptor, plaintiff-appellant, Estella Kreglow, whereas, it should have been rendered in her favor.

3. Error of the court in overruling objections to the testimony of administrator and Laura Frey, claimant, and excepted to by exceptor, plaintiff-appellant, Estella Kreglow.

4. For other errors manifest from the face of the record.

This case is very difficult of determination. Counsel, in their briefs, have not cited any cases directly in point and in our independent research, we have not been able to find any reported cases dealing with a similar factual situation.

Mrs. Frey testified that from time to time she talked to the different Probate Judges then in office but no attempt was ever made to procure a court order. We are inclined to think that this would have been a preferable procedure. The sole question for determination is whether or not Mrs. Frey, after the death of Miss Pfost and the filing of her final account as guardian, can legally present a claim against the Rosanna Pfost estate based on claimed legal obligations through an effectual appropriation of Mrs. Frey's property.

Counsel for appellee argue that the claim is not and should not be classified as rent but the amount is measured on the basis of rental value. Counsel for appellant variously and plausibly argue that a guardian can not, under any circumstances, create an obligation to herself against her ward.

Counsel on both sides, in their briefs, have sought to classify the claim of Mrs. Frey. The brief of counsel for appellant comments that in the factual situation, it might come within the classification of slander of title. Following this suggestion, counsel urge that an action of this character would abate by the death of the ward. We are unable to follow counsel's suggestion that the claim might appropriately be classified as a slander of title.

Counsel for appellant have earnestly urged that claimant is not entitled to recover anything, yet say, that if, under any theory, claim may be allowed, then the appropriate statute of limitations would be invoked. Counsel for appellee assert that claimant is not basing her cause of action on any contractual relation, but rather a tortuous occupancy by the ward. The law seems to be well established that during the guardianship the guardian can not sue his ward nor the ward his guardian, but after the settlement of the guardian's account, either may sue. 20 **O. Jur.** (Guardian and Ward) **Sec. 158, p. 336.**

In Vol. 25, A. Jur. (Guardian and Ward) Sec. 158, we find a discussion of this same principle. This last section contains a pronouncement that, in an action by the guardian against the ward, the statute of limitations and the defenses of laches or estoppel in pais apply as in other cases, modified in their application by the trust or quasi-trust relation of the parties. The only question as to which there is serious conflict is as to when the statute begins running, some decisions holding that it begins as soon as the guardianship terminates, and others, not until the guardian has filed his account and the balance has been determined, or the guardian has definitely denied his obligation and refused to account.

While not crystal clear, we are inclined to the view that the claim or cause of action may be classified as a trespass on real property. This is practically the same classification as given by counsel for appellee, to-wit: "tortuous occupancy".

While the authorities seem to support the theory that, after the termination of the guardianship, suit may be brought by either against the other under certain conditions, yet the authorities universally hold that courts must take into consideration the confidential relationship previously existing and very carefully guard against imposition arising through such relationship.

We are constrained to hold that under the facts in the instant case, Mrs. Frey had an enforcible claim against her ward, that the claim could properly be classified as a continuous trespass on real estate; that the statute of limitations under such an action ordinarily is limited to four years, §11224 GC.

The statute was tolled by reason of the fact that the guardian could not bring an action against her ward. In the instant case the statute of limitation commenced to run as soon as administration was taken out on the estate of Miss Pfost.

We searched the record to ascertain if the claimant, Mrs. Frey, had obtained any undue advantage by reason of the fiduciary relation. We have no difficulty in determining no undue advantage. On the contrary, it is inferable that money was saved by humoring Miss Pfost and letting her have her own way in living in her own home, even though a situation was created in which Mrs. Frey was unable to rent her part of the residence.

We find no prejudicial error.

The judgment of the trial court will be affirmed.

HORNBECK, J., GEIGER, J, concur.